### BRAINARD v. SAN DIEGO CO-OP. ASS'N.

(Circuit Court of Appeals, Ninth Circuit. March 24, 1924. Rehearing Denied May 5, 1924.)

No. 4104.

1. Trusts ⊜⇒334—If local co-operative association has better right to ownership of local stores, equity will convert holder of legal title into trustee.

The fact that legal title to local co-operative stores is in a central league cannot prevent a court of equity from looking into the intricacies of the manner in which title was acquired, and if a better right to ownership is in the local association, equity will convert the league into a trustee for the true owner.

2. Trusts ⊜⇒372(3)—Evidence held to show co-operative league held legal title to local stores as trustee for local association.

In a proceeding by a local co-operative association against bankruptcy trustee of a league of co-operative stores for the return of the local stores and for an accounting, evidence that the local association was recognized as an entity by the league, and that the money paid for such stores was subscribed by the local association, held sufficient to warrant a finding

that the league was but a trustee, notwithstanding legal title was in the league, that the local manager was appointed by the league, and that. deposits in the bank were made in the name of the league.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit by the San Diego Co-operative Association against G. W. Brainard, trustee in bankruptcy of the Pacific Co-operative League Stores, Inc., bankrupt. From a decree for plaintiff, defendant appeals. Affirmed.

This is an appeal by the trustee in bankruptcy of the estate of the Pacific Co-operative League Stores, Inc., bankrupt corporation, from an order of the District Court confirming the report of a special master and ordering the ancillary receiver to return three certain stores to the San Diego Co-operative Association, and ordering an accounting. The matter arose out of a petition in reclamation and for an accounting. Petitioner, San Diego Co-operative Association, claimed ownership and right to possession of certain stock in trade, books, and other personal property constituting a general merchandise business carried on at designated places in San Diego. Issues were framed, evidence heard, and the report of the master was to the following effect:

In November, 1919, and prior thereto, certain persons formed an unincorporated association in San Diego under the name of San Diego Consumers' Co-operative Association, which, after several changes in name, was called the Pacific Co-operative League, San Diego Branch, and later was called the San Diego Co-operative Association, petitioner herein. The association held meetings and had a board of directors, but was not incorporated by law. In 1913, prior to the times stated, the Pacific Co-operative league, called the League, a California corporation, was duly formed at San Francisco. The by-laws, among other things, defined the purposes of the corporation to be to promote the theory of co-operation, establish a central bureau of information, to act as promoters and advisers of co-operative associations, and to develop a federation of co-operative bodies. In order that persons might become associated with the League without incurring liabilities beyond the investment of "loan capital," and that such persons be organized into "locals," and that they might operate enterprises, the board could provide rules to admit and retain associate members and to charter them into branches with representation on the board of directors. Upon request from a group of associate members, the board of directors might order a survey of any district selected for a branch store, and if the directors decided in favor of establishing such branch, capital might be provided by the payment by each applicant not already an associate, of $10 for membership plus such payments for loan capital by each associate member as would by the total number of persons applying provide the capital necessary to establish the branch business. Each local branch, when being admitted into the League, was to transfer the funds collected as loan capital for the establishment of its stores, for which there should be issued membership loan capital certificates. The central board would then institute the store and provide the stock. By-laws and rules of locals were to be approved by the central board.

In February, 1920, the official organizer of the League went to San Diego to take subscriptions to the Co-operative League, and, in addition to the representations contained in the by-laws of the League, he represented that the local stores would be financed by money subscribed by the local people, which would be returned on dissolution of the stores, and that money subscribed by the local members would bear interest from the profits of the business of the local stores, and that the subscribers would share in the profits in proportion to the amount of goods which they themselves purchased from the local stores; that the business of other branch stores would not be considered in figuring profits on the money subscribed by the San Diego people. The subscription blanks circulated in San Diego provided that the subscriber agreed,

for membership in the San Diego Branch co-operative stores, to pay $50 in cash or installments on receiving notice of collection. At the time of organization the subscribers signed a subscription blank in form substantially as follows: "I, the undersigned, in order to assist in the establishment of the co-operative store (branch of Pacific Co-operative League) at San Diego, hereby subscribe the sum of $————, of which $10 is for associate membership, and the balance for $————, first payment on loan capital or new loan or installment, as might be for investment by the Pacific Co-operative League in said store, to be entitled to interest and privileges according to the by-laws. The subscriber agreed to pay of the amount subscribed $50 deposit with the application, and the balance as might be written in. Each subscriber in San Diego was to contribute $50, $10 to be set aside as associate membership in the League, as provided in the by-laws, the remaining $40 to be "loan capital as provided in the by-laws," the payment of $40 being evidenced by certificate which recited that the $40 was to be invested in the Pacific Co-operative League for the use of the co-operative store at San Diego, in accordance with the by-laws of the League, the holder agreeing that the certificate was liable to forfeiture in the event the holder became indebted to the League.

When the subscriptions were taken and the loan capital issued, there was no statement made other than the announcement of the by-laws as to who would own the stores bought with the money subscribed as loan capital by the San Diego people. The local organization and the Pacific Co-operative League, through their officers and organizers, joined in raising money on the subscriptions to buy and establish the three stores in San Diego. The board of directors of the local association contracted for the purchase of the three stores, the contract of purchase providing for an agreement of sale to be approved by the League, and approval was afterward given by the League. At the time of the contract to purchase, subscriptions in San Diego exceeded $20,000 as loan capital, which was turned over to the League. The contract was signed in August, 1920, and thereafter drafts were drawn in favor of the Consumers' Grocery Company, vendor, and in due course the drafts were paid by the League at San Francisco and charged to the account of the San Diego stores. Bill of sale was made to the League, but was not recorded, and no notice of its execution and delivery was ever given to the local organization or its directors. When the stores were bought about September, 1920, there had been paid upon the subscriptions heretofore referred to over $15,000, and thereafter payments on subscriptions to loan capital brought the total payments to over $20,000, all of which sums were received by the League. The three stores in San Diego operated under the name of Pacific Co-operative League Store, San Diego Branch, the moneys received being deposited in bank at San Diego, and subsequently deposited to the League account in San Francisco. Insurance and taxes were carried and paid in the name of the League. The amount to be paid the subscriber for loan capital for interest and dividends was computed by the board of directors of the local organization, and the computation forwarded to the League office in San Francisco, which, in turn, issued orders to the manager of the San Diego Branch to pay the sums designated.

The San Diego stores were profitable, and in November, 1921, the Pacific Co-operative League, without the knowledge or consent of the board of directors of the local organization, conveyed to the Pacific Co-operative League Stores, Inc., all of its assets, and in December, 1921, the local organization passed a resolution severing its relations with the Pacific Co-operative League, and the members adopted new by-laws and changed the name to San Diego Co-operative Association. After the transfer of the assets of the Pacific Co-operative League to the Pacific Co-operative League Stores, Inc., some holders of certificates of loan capital surrendered them to the Pacific Co-operative League Stores, appellant herein. In February, 1922, the state authorities revoked permit to the Pacific Co-operative League to issue stock.

The master found there was no obligation upon the Pacific Co-operative League to repay to subscribers the loan capital, except upon dissolution of the stores, and then pro rata as the then value of the stores appeared; that the Pacific Co-operative League was to receive no financial compensation for its services to the San Diego stores, except $10 subscribed as the fee for as-

sociate membership in the League; that the three stores were brought with money subscribed by the owners and holders of the loan capital certificate under an agreement that the Pacific Co-operative League should manage and operate the stores for the benefit of the owners and holders of the loan capital certificates, and distribute to the owners and holders of such certificates the profits, first paying to the owners and holders interest, and next to divide the profits among the owners and holders of the certificates in certain proportions; that the Pacific Co-operative League by its insolvency was incapacitated to act for the owners and holders of the loan capital certificates and to manage the stores; that as the representative of the owners and holders of certificates the petitioner, San Diego Co-operative Association, and the trustee appointed by it, are entitled to the possession of the stores as trustee of the owners and holders of the loan capital certificates; the Pacific Co-operative League has had the legal title to the stores, but that the beneficial interest was always in the owners and holders of the loan capital certificates; that the ancillary receiver in bankruptcy, respondent in the petition in réclamation, has no interest in the stores, and is not entitled to the possession of them, and that the stores should be delivered to the representative of the owners and holders of the loan capital certificates.

Norman A. Bailie and W. T. Craig, both of Los Angeles, Cal., and Joseph Kirk, of San Francisco, Cal., for appellant.

Elmer J. Hertel, of Oakland, Cal., and Marcus W. Robbins, of San Diego, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The fact that the legal title to the San Diego stores was in the League cannot prevent a court of equity from looking into the intricacies of the manner by which title was acquired, and if it is found to be clear that a better right of true ownership is in the San Diego association, equity will convert the League into a trustee for the true owner.

[2] It is not necessary to set forth evidence supporting the findings of the master, further than to say that the testimony is plain that the San Diego Co-operative Association was recognized as an entity by the Pacific Co-operative League, and that the League paid for the stores purchased in San Diego with money subscribed by the San Diego association.

There is no ground for the contention that any creditor of the Pacific Co-operative League was misled into giving credit to that organization, and quite apparent is it that the creditors of the San Diego stores extended credit upon the faith of the stores being owned by San Diego people. Among circumstances throwing light upon the situation may be cited that on the largest store in San Diego was a sign reading: "This store owned by 500 families. Ask the clerk how you can join them." The loan capital certificate showed on its face that the money was for the San Diego stores, to be used in accordance with the by-laws of the League, which, in providing for co-operation, contemplated groups of people rather than individuals. The facts that the manager of the San Diego stores was selected by the League, and that deposits in bank were made to the credit of the League, do not necessarily change the relationship of trusteeship. The funds were always deposited in trust with the League, and while the League assumed to act and did act in payment of taxes, and, as said, took legal title to the

stores, it was but a trustee for those from whom the moneys came. Byrne v. McGrath, 130 Cal. 316, 62 Pac. 559, 80 Am. St. Rep. 127.

Under the decree of the District Court there is no danger that creditors of the San Diego Association may be defrauded, for when the stores are returned, creditors of the stores will naturally look for payment by the stores returned, and will govern their action accordingly. Our judgment is that the court was correct, and that the decree should be affirmed.

Affirmed.